**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

JOSEPH R. BIDEN, JR.,

*Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant*.

---

Case No. 1:26-cv-01818-TSC

**DECLARATION OF TODD B. TATELMAN IN SUPPORT OF
MOTION OF THE COMMITTEE ON THE JUDICIARY OF THE U.S. HOUSE OF
REPRESENTATIVES TO INTERVENE**

I, Todd B. Tatelman, pursuant to the provisions of 28 U.S.C. § 1746 declare and say:

1.      I am the Deputy General Counsel in the Office of General Counsel of the U.S.

House of Representatives.  I have served in this capacity since 2018 and have served in the

Office of General Counsel since 2011.  I represent the Committee on the Judiciary of the U.S.

House of Representatives in this matter.

2.      Attached as Exhibit A is a true and correct copy of Letter from Rep. Jim Jordan,

Chairman, H. Comm. on the Judiciary, to Pamela Bondi, Att'y Gen., DOJ (Mar. 23, 2026).

3.      Attached as Exhibit B is a true and correct copy of Letter from Rep. Jim Jordan,

Chairman, H. Comm. on the Judiciary, to Todd Blanche, Acting Att'y Gen., DOJ (May 22,

2026).

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

June 1, 2026, in Washington, D.C.

 */s/ Todd B. Tatelman*
Todd B. Tatelman

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH R. BIDEN, JR.,

                    *Plaintiff*,

    v.

U.S. DEPARTMENT OF JUSTICE,

                    *Defendant*.

Case No. 1:26-cv-01818-TSC

# Exhibit A

JIM JORDAN, Ohio
CHAIRMAN

JAMIE RASKIN, Maryland
RANKING MEMBER

ONE HUNDRED NINETEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–6906
judiciary.house.gov

March 23, 2026

The Honorable Pamela J. Bondi
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Bondi:

During the 118th Congress, the Committee conducted oversight of Special Counsel Robert K. Hur's investigation of President Joe Biden's willful mishandling of classified information. As part of that effort, we requested that Mark Zwonitzer, the ghostwriter for President Biden's memoirs, produce the audio recordings of his conversations with President Biden relating to his ghostwriting work on President Biden's memoirs.[1] Unfortunately, Zwonitzer declined to comply with our request.

We appreciate the increased level of cooperation and responsiveness demonstrated by the Department under your leadership. Your commitment to transparency has resulted in the production of materials that were not previously made available to the Committee, including the audio recordings of Special Counsel Hur's interviews with President Biden and Zwonitzer. Contrary to your transparency, the House of Representatives was forced to hold then-Attorney General Merrick Garland in contempt for defying duly issued subpoenas from two congressional committees for those recordings.[2]

Accordingly, to advance our oversight of the politicization of the Biden-Garland Department of Justice, please produce the following documents and information:

1. All audio recordings of any interviews or conversations between Mark Zwonitzer and President Biden relating to Zwonitzer's ghostwriting work on President Biden's memoirs, *Promise Me, Dad* and *Promises to Keep*.

---

[1] *See* Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Mark Zwonitzer (Feb. 14, 2024); Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Mark Zwonitzer (Mar. 22, 2024) (issuing a subpoena for the audio recordings, among other materials).

[2] Carrie Johnson & Deirdre Walsh, *House votes to hold Attorney General Garland in contempt*, NAT'L PUB. RADIO (June 12, 2024).

The Honorable Pamela J. Bondi
March 23, 2026
Page 2

Pursuant to Rule X of the House of Representatives, the Committee has jurisdiction over the Department of Justice.[3] If you have any questions about this matter, please contact Committee staff at (202) 225-6906.

Thank you for your prompt attention to this matter.

Sincerely,

Jim Jordan
Chairman

cc:     The Honorable Jamie Raskin, Ranking Member

---

[3] Rules of the House of Representatives, R. X, 119th Cong. (2026).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH R. BIDEN, JR.,

                        *Plaintiff*,

    v.

U.S. DEPARTMENT OF JUSTICE,

                        *Defendant*.

Case No. 1:26-cv-01818-TSC

# Exhibit B

ONE HUNDRED NINETEENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–6906
judiciary.house.gov

May 22, 2026

The Honorable Todd Blanche
Acting Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Acting Attorney General Blanche:

The Committee on the Judiciary has been conducting oversight of the Department of Justice's use of special counsels during the Biden-Harris Administration, specifically the investigations conducted by Special Counsels Jack Smith and Robert K. Hur. Based on its investigation, the Committee is "consider[ing] whether legislative reforms to the Department of Justice and its use of special counsels are necessary."[1] The reforms under consideration include, but are not limited to, "changing certain procedures governing the Department's special counsel investigations to better ensure that the Department pursues impartial justice."[2]

With respect to Special Counsel Jack Smith's investigation of President Trump, the Committee has requested and subpoenaed from the Department and other sources numerous documents related to his office's work.[3] Moreover, the Committee, during this Congress, has conducted many transcribed interviews and depositions of those employed by Smith, deposed Smith himself, and held a public hearing where Smith testified.[4]

As part of its oversight, the Committee has also sought and obtained materials related to Special Counsel Hur's investigation of President Joe Biden's mishandling of classified information. Special Counsel Hur found that President Biden, shortly after the end of his service

---

[1] H.R. REP. NO. 118-628, at 12 (2024).

[2] *Id.*

[3] *See, e.g.*, Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to John Stankey, Chairman & CEO, AT&T (Nov. 4, 2025), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2025-11-04-jdj-to-at-t-stankey-re-phone-records.pdf; Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Jack Smith, Special Couns., U.S. Dep't of Just. (Nov. 8, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/JDJ%20and%20Loudermilk%20to%20Jack%20Smith%2011.8.24.pdf.

[4] *See, e.g.*, *Oversight of the Office of Special Counsel Jack Smith: Hearing Before the H. Comm. on the Judiciary*, 119th Cong. (2026); Deposition of Jack Smith, former Special Couns., U.S. Dep't of Just., by the H. Comm. on the Judiciary (Dec. 17, 2025).

The Honorable Todd Blanche
May 22, 2026
Page 2

as Vice President, disclosed classified information to Mark Zwonitzer, a ghostwriter who worked with President Biden, during conversations in preparation for a memoir. In the 118th Congress, the Committee held a hearing where Special Counsel Hur testified.[5] It also subpoenaed records related to the investigation, including the audio recordings of Special Counsel Hur's interviews with President Biden and Mark Zwonitzer as well as President Biden's conversations with Zwonitzer.[6] While the Department ultimately produced to the Committee in 2025 the recording of Special Counsel Hur's interview with President Biden, to date, the Committee unfortunately has not received the recordings of President Biden's conversations with Zwonitzer.

As you know, the Committee recently made another effort to obtain these recordings through a letter sent to your predecessor.[7] The Committee has become aware that President Biden, through litigation papers filed by personal counsel, is now attempting to block the Department's release of these recordings to the Committee.[8] Because President Biden's effort is based on an inaccurate view of the Committee's interest in this material and an incomplete understanding of the events that led to the Committee's March 23 letter, this letter is intended to set the record straight and reiterate the Committee's request for this information.

Most importantly, President Biden incorrectly implies that the Committee's interest in obtaining the recordings of his conversations with Zwonitzer is a new request that was ginned up by the Department. In fact, the Committee's effort to gain possession of these recordings began more than two years ago. On February 14, 2024, shortly after the release of Special Counsel Hur's final report, the Committee sent a letter to Zwonitzer requesting, among other things, the Biden-Zwonitzer tapes.[9] On March 22, 2024, after Zwonitzer refused the Committee's request for voluntary cooperation, the Committee issued a subpoena compelling production of the Biden-Zwonitzer tapes.[10] On May 6, 2024, the Committee responded to Zwonitzer's objections to the subpoena, explaining why they were without merit and reiterating Zwonitzer's obligation to produce responsive materials.[11] When Zwonitzer again refused to comply with the subpoena, the

---

[5] *Hearing on the Report of Special Counsel Robert K. Hur: Before the H. Comm. on the Judiciary*, 118th Cong. (2024).

[6] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, et al., to Merrick Garland, Att'y Gen., U.S. Dep't of Just. (Feb. 27, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2024-02-27%20JDJ%20to%20DOJ%20re%20subpoena.pdf; Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Mark Zwonitzer (Mar. 22, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/Zwonitzer%20Subpoena%20Cover%20Letter.pdf.

[7] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Pamela J. Bondi, Att'y Gen., U.S. Dep't of Just. (Mar. 23, 2026) (on file with Committee).

[8] *See* Motion to Intervene by Joseph R. Biden, Jr., *Heritage Found. v. U.S. Dep't of Just.*, No. 24-cv-00645 (D.D.C. May 12, 2026), ECF No. 51.

[9] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Mark Zwonitzer (Feb. 14, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2024-02-14%20JDJ%20to%20Zwonitzer%20re%20Biden%20Memoirs.pdf.

[10] March 22 Letter, *supra* note 6.

[11] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Louis M. Freeman, Att'y for Mark Zwonitzer (May 6, 2024), https://judiciary.house.gov/sites/evo-subsites/judiciary.house.gov/files/evo-media-document/2024-05-06%20JDJ%20to%20Freeman%20re%20Zwonitzer%20subpoena.pdf.

The Honorable Todd Blanche
May 22, 2026
Page 3

Committee reported a resolution recommending that he be held in contempt of Congress for withholding the Biden-Zwonitzer tapes.[12]

The Committee also attempted to obtain the Biden-Zwonitzer tapes directly from the Biden-Garland Department of Justice. On February 12, 2024, the Committee wrote to Attorney General Merrick Garland requesting documents referenced in Special Counsel Hur's report, including "[a]ll documents and communications, including audio and video recordings, related to the Special Counsel's interview[s] of President Biden" and "Mark Zwonitzer."[13] On February 27, 2024, after Attorney General Garland refused to cooperate with the Committee's request, the Committee issued a subpoena compelling production of the requested materials, which included the Biden-Zwonitzer tapes.[14]

The Biden-Zwonitzer tapes are "related to the Special Counsel's interview[s] of President Biden" and "Mark Zwonitzer," and accordingly were responsive to the Committee's subpoena to Attorney General Garland, because Special Counsel Hur and his staff asked President Biden and Zwonitzer about the tapes during their respective interviews.[15] For instance, Special Counsel Hur described in his report asking President Biden and Zwonitzer about President Biden's recorded statement that he had "just found all the classified stuff downstairs."[16] Special Counsel Hur also used President Biden's statements on the Biden-Zwonitzer tapes when he interviewed the President, and the tapes assisted Special Counsel Hur in assessing President Biden's mental state as Special Counsel's Office considered potential prosecution.[17]

In his testimony before the Committee on March 12, 2024, Special Counsel Hur detailed how the Biden-Zwonitzer tapes were essential in the investigation.[18] As Special Counsel Hur explained:

> One of the things that's in the report is an assessment of the President's memory, based on recordings from the 2016–2017 timeframe . . . of conversations between Mr. Biden and his ghostwriter, and comparing that with the President's memory that he

---

[12] H.R. REP. No. 118-628 (2024).

[13] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, et al., to Merrick Garland, Att'y Gen., U.S. Dep't of Just. (Feb. 12, 2024), https://oversight.house.gov/wp-content/uploads/2024/02/DOJ-Transcript-video-letter-02122024.FINAL_.pdf.

[14] February 27 Letter, *supra* note 6.

[15] *See* Interview by Special Counsel Robert Hur et al., with President Joe Biden, at 13-17, 27-29, 31-32, 37-38 (Oct. 9, 2023) (asking about the Biden-Zwonitzer tapes); Interview by Off. of Special Couns. with Mark Zwonitzer, at 74-77, 95-97, 102, 104-06, 121-22, 130 (July 31, 2023) (same); Interview by Off. of Special Couns. with Mark Zwonitzer, at 10-14, 18-21, 26-30, 59-61, 63-64, 67-68, 73-74 (Jan. 4, 2024) (same).

[16] ROBERT K. HUR, U.S. DEP'T OF JUST., OFF. OF SPECIAL COUNS., REPORT ON THE INVESTIGATION INTO UNAUTHORIZED REMOVAL, RETENTION, AND DISCLOSURE OF CLASSIFIED DOCUMENTS DISCOVERED AT LOCATIONS INCLUDING THE PENN BIDEN CENTER AND THE DELAWARE PRIVATE RESIDENCE OF PRESIDENT JOSEPH R. BIDEN, JR. 113 (2024).

[17] *See id.* at 207-08, 247-48.

[18] *Hearing on the Report of Special Counsel Robert K. Hur: Before the H. Comm. on the Judiciary*, 118th Cong., at 72 (2024) (statement of Robert K. Hur, Special Couns., U.S. Dep't of Just.).

The Honorable Todd Blanche
May 22, 2026
Page 4

> exhibited during our interview of him in October 2023. So, there was a comparison there.[19]

Accordingly, given Special Counsel Hur's direct comparison between the two interviews, a reasonable interpretation of the Committee's demand would understand the Biden-Zwonitzer tapes to be "related to" Special Counsel Hur's interviews with President Biden and Zwonitzer.[20]

It should therefore come as no surprise that when the Committee was recently made aware of an opportunity to obtain these recordings, it made another attempt to do so by issuing a new request to the Department.[21] The Committee's interest in obtaining these tapes dates back more than two years; it was not generated by the Department two months ago. In short, the record makes clear that the Committee is neither a newcomer to this issue nor is it simply doing the bidding of the Department.

Additionally, as part of his argument to prevent the Department from producing the recordings to the Committee, President Biden claims that the Committee's effort to obtain the Biden-Zwonitzer tapes is a "pretextual attempt to disclose records reflecting President Biden's private conversations to the public for the sake of exposure, among other improper purposes."[22] President Biden relatedly contends that the Committee's recent request for the Biden-Zwonitzer tapes "lacks a legitimate legislative purpose" because the tapes "long predate the Special Counsel investigation" of President Biden's mishandling of classified documents and therefore "could not possibly shed light on the 'politicization of the Biden-Garland Department of Justice.'"[23] These assertions are inaccurate.

As explained above, Special Counsel Hur relied in part upon these recordings in making his determination not to prosecute President Biden. As a result, these recordings are relevant to the Committee's oversight of Special Counsel Hur's investigation, and in particular for the Committee "to properly assess whether Special Counsel Hur appropriately pursued justice by declining to recommend charges against President Biden because of his poor mental state at the time that he disclosed classified information to Mr. Zwonitzer."[24] As the Committee has previously set forth, "[t]his is especially important because while Special Counsel Hur declined to bring charges against President Biden, at the same time, the Department, through another Special Counsel's office, [was] prosecuting a former President and declared candidate for that office for allegedly mishandling classified information."[25]

---

[19] *Id.*

[20] Indeed, the Committee's use of the phrase "related to" was intentionally broad so as to encompass "anything that . . . is in any manner whatsoever pertinent to that subject." Definitions to Accompany Subpoena to Merrick B. Garland, Att'y Gen., U.S. Dep't of Just., from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, 119th Cong. (Feb. 27, 2024).

[21] March 23 Letter, *supra* note 7.

[22] Proposed Defendant-Intervenor's Answer to Amended Complaint & Cross-Claims ¶¶ 100, 106, *Heritage Found. v. U.S. Dep't of Just.*, No. 24-cv-00645 (D.D.C. May 12, 2026), ECF No. 51-3.

[23] *Id.* ¶¶ 101, 107.

[24] H.R. REP. NO. 118-628, at 12 (2024).

[25] *Id.*

The Honorable Todd Blanche
May 22, 2026
Page 5

To the extent that the Committee were to conclude that special counsel investigations during the Biden-Harris Administration did not lead to fair and impartial justice, the Committee may consider legislative reforms to address this problem including, among other proposals, "changing certain procedures governing the Department's special counsel investigations to better ensure that the Department pursues impartial justice."[26]

Furthermore, the Committee has explained that its review of the recordings of President Biden's conversations with Zwonitzer could also help inform legislative reforms related to the management of classified information, "includ[ing], among other proposals, establishing clear statutory guidelines governing the handling, storage, and disclosure of classified materials, as well as modifying criminal penalties for the unauthorized dissemination and disclosure of classified materials."[27] The tapes could inform the Committee's consideration of these reforms because, as we have previously stated:

> The Committee seeks to understand the context behind President Biden's disclosure of classified materials to [Zwonitzer]— especially given the fact that he later stored and handled the classified information for his own use. The Committee seeks to comprehend the manner of the storage and handling of such materials, the way the President disclosed the classified materials to Mr. Zwonitzer for his own gain, and whether reforms are needed to curb or prevent such future behavior by government officials entrusted with classified information.[28]

In any case, President Biden's attacks against the Committee's supposed motivations are squarely foreclosed by Supreme Court precedent. While President Biden may question the Committee's motives, the Supreme Court has been clear that "in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it."[29] In fact, when Congressional committees assert they are investigating in aid of legislating, as is the case here, "the presumption should be indulged that this was the real object."[30] Courts, other parties, and, in this case, a former President have "no right to assume that the contrary was intended."[31] Thus, even if President Biden's "hypotheses about the Committee's real motivations were correct[, and as explained above, they are not], they are irrelevant."[32]

The Supreme Court has recognized that Congress has a "broad and indispensable" power to conduct oversight, which "encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys in our social, economic or political system for the purpose

---

[26] *Id.*
[27] March 22 Letter, *supra* note 6.
[28] May 6 Letter, *supra* note 11.
[29] *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508 (1975).
[30] *McGrain v. Daugherty*, 273 U.S. 135, 178 (1927).
[31] *Id.*
[32] *Bragg v. Jordan*, 669 F. Supp. 3d 257, 269 (S.D.N.Y. 2023).

The Honorable Todd Blanche
May 22, 2026
Page 6

of enabling Congress to remedy them."[33] Pursuant to Rule X of the House of Representatives, the Committee has legislative and oversight jurisdiction over the Department of Justice and criminal justice matters in the United States.[34] The Committee has repeatedly articulated its legislative interest in the Biden-Zwonitzer tapes and attempted to obtain them for more than two years. There can be no serious dispute that the Committee's demand for this material is proper and lawful.

The Committee trusts that this letter sufficiently corrects the record regarding the nature and extent of the Committee's interest in these recordings and it looks forward to the Department's prompt production of the Biden-Zwonitzer tapes.

Thank you for your attention to this matter.

Sincerely,

Jim Jordan
Chairman

cc:    The Honorable Jamie Raskin, Ranking Member

---

[33] *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020).
[34] Rules of the House of Representatives, R. X, 119th Cong. (2026).